IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Matt A. Rogers, individually and on behalf of
others similarly situated,

       Plaintiff,

v.

SWEPI LP and Shell Energy Holding GP, LLC,

       Defendants.

Case No: 2:16-cv-999

Judge Graham

## Opinion and Order

Plaintiff Matt A. Rogers brings this putative class action alleging that landowners were not paid the signing bonuses they were due under oil and gas leases they had entered into with defendants. This matter is before the court on the motion of defendants SWEPI LP and Shell Energy Holding GP, LLC to compel arbitration. For the reasons stated below, the motion is denied.

**I.    Background**

Energy production companies have entered into leases with landowners in eastern Ohio since the discovery of significant Utica Shale oil and gas reserves in 2011. Plaintiff Rogers, an Ohio resident who owns land in Guernsey County, entered into an oil and gas lease (the "Lease") with defendants in October 2012. Defendants have their principal place of business in Houston, Texas and are corporate affiliates of Royal Dutch Shell plc.

The Lease contained a granting clause under which Rogers, the lessor, conveyed to SWEPI, the lessee, a leasehold interest in his land for purposes of oil and gas exploration and production. Lease at ¶ 1. Another clause provided that the parties could execute a Memorandum of Lease, which would then be recorded. Id. at ¶ 15(C). The parties did so, and the recorded Memorandum of Lease gave notice of SWEPI's leasehold interest in Rogers's property. Compl., Ex. B.

The Lease also contained a bonus payment clause. It provided that SWEPI would pay Rogers a "signing bonus" of $5000 for each acre that was leased, "subject to Lessee's verification of Lessor's marketable title." Lease at ¶ 16. SWEPI had 120 days from the execution of the Lease to

verify marketable title. If SWEPI determined to its "reasonable satisfaction" that Rogers did not have marketable title, then the Lease was terminated "with no payments owed by the Lessee to Lessor." Id.

Rogers alleges that SWEPI never paid the signing bonus. Instead he received a form letter in August 2012 acknowledging that "considerable time has passed since signing with Shell due to the length of time the title review process is taking for this project." Compl., Ex. C. The letter continued, "Shell is committed to continue with the leasing of your property and pay bonus based on the acres that satisfy title research. As a solution to minimize further time passage, Shell has canceled your original lease and surrendered your Memorandum of Oil and Gas Lease." Id. On August 8, 2012, SWEPI filed and recorded a Surrender and Cancellation of Oil and Gas Lease for Rogers's land. Compl., Ex. D.

Although the letter provided a phone number for SWEPI and expressed SWEPI's desire to "initiate a new lease," Rogers alleges that his attempts to contact SWEPI by phone were unsuccessful. He contends that the phone number was out of service and that a voicemail he left at another number was not returned. Rogers never heard from SWEPI again.

The complaint alleges that many other landowners in eastern Ohio entered into the same or substantially the same Lease with SWEPI as Rogers did. The complaint further alleges that SWEPI likewise failed to conduct title research for their properties and later filed documents of Surrender and Cancellation of Oil and Gas Lease in the county recorder's office. SWEPI allegedly did not pay a signing bonus to any member of the proposed class, which allegedly consists of about 800 landowners.

The complaint asserts a single cause of action for breach of contract relating to SWEPI's alleged failure to pay the signing bonus.

Defendants have moved to compel individual arbitration under the Lease's arbitration clause.

## II. Standard of Review

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a cause of action is determined to be covered by arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration

2

has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–83 (1960).

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." Raasch v. NCR Corp., 254 F.Supp.2d 847, 851 (S.D. Ohio 2003).

### III. Discussion

When considering a motion to compel arbitration under the FAA, a court first "must determine whether the parties agreed to arbitrate." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000). "In determining whether the parties have made a valid arbitration agreement, 'state law may be applied *if* that law arose to govern issues concerning the validity, revocability,' and enforceability of contracts generally, although the FAA preempts 'state laws applicable to *only* arbitration provisions.'" Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) (emphasis in original) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996)). Thus, "[s]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'" Id. at 889 (quoting Casarotto, 517 U.S. at 687).

At first glance, it appears defendants have a strong argument for compelling arbitration. Plaintiff is suing for breach of contract, a legal theory that depends on the existence and enforceability of a contract. The contract here contains a broad arbitration clause which covers "[a]ny dispute that arises under this Lease." Lease at ¶ 33.

As plaintiff observes, however, the bonus payment clause of the Lease contains language that changes the analysis. The final sentence of the clause states, "By Lessor's signing this Lease, Lessor promises to proceed with this Lease and be bound thereby upon Lessee's paying the full

3

amount of the bonus payment." Lease at ¶ 16. The word "upon" means "on condition of." Gastineau v. Gastineau, No. 10CA16, 2011 WL 332727 at *4 (Ohio Ct. App. Jan. 28, 2011) (quoting Webster's Third New Int'l Dictionary). "Upon" thus "introduces a condition or event." Bryan A. Garner, A Dictionary of Modern Legal Usage at 904 (2d ed. 1995). The court finds that the final sentence of the bonus payment clause creates a condition precedent to plaintiff being bound to proceed with the Lease – that SWEPI pays him the bonus payment.

SWEPI responds that this reading of the bonus payment clause means that "there never was a contract," which in turn would undermine plaintiff's claim for breach of contract. (Doc. 27 at PAGEID #191). According to SWEPI, if plaintiff was not bound by the Lease until he received a bonus payment, then his promises in the Lease were illusory and the contract fails for lack of mutuality of obligation. See Trumbull v. Century Mktg. Corp., 12 F.Supp.2d 683, 686 (N.D. Ohio 1998) ("Without mutuality of obligation, a contract cannot be enforced.").

The court disagrees. Under Ohio law, "a contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage." Local Mktg. Corp. v. Prudential Ins. Co., 159 Ohio App. 3d 410, 414, 824 N.E.2d 122, 125 (Ohio Ct. App. 2004) (footnote omitted). Viewing the Lease in its entirety, the court finds that plaintiff entered into a binding agreement when he signed the Lease. The Lease provided, "This Lease shall become effective on the date this Lease is signed by the Lessor," and the Lease's five-year term commenced upon execution. Lease at ¶8. Id. The Lease contained a granting clause which stated that the Lessor "does hereby lease to the Lessee the land described below," meaning that the conveyance was effective upon execution of the Lease. Id. at ¶1. The Lease provided that the parties could file a recorded Memorandum of Lease, which they did simultaneously to executing the Lease and thereby put others on notice of the encumbrance on plaintiff's property. See O.R.C. § 5301.251 (the recording of a memorandum of lease provides constructive notice of its contents); Edward A. Kemmler Mem'l Found. v. 691/733 E. Dublin-Granville Rd. Co., 62 Ohio St. 3d 494, 499, 584 N.E.2d 695, 698 (Ohio 1992) ("[W]ritings executed as part of the same transaction should be read together."). The Lease therefore obligated plaintiff, upon execution, to convey a leasehold interest in his land to SWEPI. By doing so, plaintiff encumbered the land and could not convey the same interest to anyone else.

The Lease set forth a 120-day period after execution for SWEPI to verify title to the property. If the title were not marketable, then SWEPI would not pay the signing bonus and would terminate the lease. See Lease at ¶16. But if the title were marketable, SWEPI had to pay the signing bonus and plaintiff had to proceed with the Lease. The rest of the Lease's terms would

4

govern the parties' relationship with respect to royalty payments, auditing rights, liability for the impact of SWEPI's operations to plaintiff's land, and arbitration, among other things.

Plaintiff correctly describes the Lease as follows: "while the Lease became 'effective' upon Rogers' signature for purposes of allowing SWEPI to encumber the property and verify title, the last sentence of [the bonus payment clause] shows that the parties' remaining obligations (the long-term relational aspects of the Lease) did not become effective – and Rogers was not 'bound thereby' – until the signing bonus was paid." (Doc. 24 at PAGEID #156). This interpretation provides meaning to the bonus payment clause and harmonizes it with the rest of the Lease. See Ottery v. Bland, 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654 (Ohio Ct. App. 1987) (courts "should attempt to harmonize all provisions in a contract rather than produce conflict in them").

The court thus finds that the final sentence of the bonus payment clause did not negate the existence of a contract but rather provided that once plaintiff made the initial conveyance, his remaining obligations were conditioned upon SWEPI paying the signing bonus. See Chesapeake Appalachia, L.L.C. v. Hickman, 236 W. Va. 421, 443, 781 S.E.2d 198, 220 (W. Va. 2015) ("Chesapeake insists that the January 2011 arbitration clause [in an oil and gas lease] is binding and effective, but the circuit court correctly discerned it was only binding and effective if Chesapeake paid Mr. Hickman the up-front bonus due in exchange for Mr. Hickman's execution of the arbitration clause. Chesapeake cannot have its cake and eat it too; it cannot say there is a binding arbitration contract whilst simultaneously claiming its consideration for execution of the contract was illusory and non-existent.").

Lastly, SWEPI contends that the result reached here is absurd because no dispute over the bonus payment or a title defect could be arbitrated, despite the arbitration clause's broad language. The court, however, does not find this result to be absurd. Parties are generally free to agree on which disputes they will arbitrate and which they will not.[1] See Council of Smaller Enterprises v. Gates, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352, 1355 (Ohio 1998) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.") (internal quotation marks omitted); Issac v. Ebix, Inc., No. 2:11-CV-00450, 2012 WL 1020296 at *7 (S.D. Ohio Mar. 26, 2012). While the Lease contained a broad arbitration clause, the specific language of the bonus payment clause made clear that plaintiff was not agreeing to arbitration until he was paid his signing bonus. See Klausing v. Chef Sols., Inc., No. 1-07-34, 2007

---

[1] Title disputes, it is worth noting, are not arbitrable under Ohio law. See O.R.C. § 2711.01(B)(1).

5

WL 3342878 at *3 (Ohio Ct. App. Nov. 13, 2007) (holding that arbitration clause was not triggered because party seeking to compel arbitration had not performed a condition precedent); Issac, 2012 WL 1020296, at *7 (same).

**IV.     Conclusion**

Accordingly, defendant's motion to compel arbitration (doc. 21) is denied. Plaintiff's unopposed motion for leave to file a sur-reply brief (doc. 29) is granted. Defendant's motion for leave to file a motion to dismiss (doc. 28) – to argue that plaintiff's reliance on the final sentence of the bonus payment clause is an admission that no contract exists – is denied.

                                                  s/ James L. Graham
                                                  JAMES L. GRAHAM
                                                  United States District Judge

DATE: February 9, 2018